[Cite as *Chernett Wasserman Yarger, L.L.C. v. ComScape Holding, Inc.*, 2014-Ohio-4214.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100907**

# CHERNETT WASSERMAN YARGER, L.L.C., ET AL.

PLAINTIFFS-APPELLEES

vs.

# COMSCAPE HOLDING, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-748386

**BEFORE:**  Stewart, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**  September 25, 2014

**ATTORNEYS FOR APPELLANTS**

David J. Kovach
Licata & Toerek
6480 Rockside Woods Boulevard, South
Suite 180
Independence, OH    44131


**ATTORNEYS FOR APPELLEES**

Jay R. Carson
Angela M. Lavin
Robert W. McIntyre
Wegman, Hessler & Vanderburg
6055 Rockside Woods Boulevard
Suite 200
Cleveland, OH    44131

MELODY STEWART, J.:

{¶1} This appeal raises questions regarding the nature of certain counterclaims filed by defendants-appellants, ComScape Holding, Inc. and Comscape Telecommunications, Inc. (collectively "ComScape"), against plaintiff-appellee law firm Chernett, Wasserman, Yarger, L.L.C. and one of its principals, Jonathon Yarger, and whether those claims, if properly classified as claims for legal malpractice, were filed within the statute of limitations. The court conducted a trial on the issues and concluded that ComScape's counterclaims sounded in legal malpractice and that they had not been filed within the statute of limitations. It entered an involuntary dismissal of the counterclaims under Civ.R. 41(B)(2) and (C), and this appeal followed.

I

{¶2} The dispute giving rise to this case has a lengthy and complex legal history grounded in the corporate governance of ComScape. ComScape was formed in 1995 and chartered in Ohio. As the "Holding" part of the ComScape corporate name suggests, ComScape was a holding company for other corporations and subsidiaries. ComScape's founding shareholders were Ghanshyam Patel ("Ghany"), Bhogilal M. Modi, Raman C. Patel, Jeremiah P. Byrne, and Jay K. Jayanthan. The corporation operated pursuant to a close corporation and shareholders agreement. It also adopted articles of incorporation and a code of regulations. Ghany and ComScape entered into an employment agreement under which ComScape agreed to employ Ghany as chief executive officer until 2012 (and as chief executive officer of the various companies held by ComScape), and use its

best efforts to have Ghany elected chairman of the board of directors. The founding members served as members of the board of directors, and Ghany was named chairman of the board. Yarger and his firm acted as corporate counsel for ComScape, with Yarger serving as assistant secretary of the corporation and its subsidiaries.

{¶3} By 2006, relations between Ghany and various shareholders and directors had deteriorated over the manner in which Ghany operated the corporation. On July 6, 2006, the board voted, over the objections of Ghany, to immediately terminate Yarger's representation of ComScape. It also passed a resolution giving the board the sole authority to hire new legal counsel. That decision was memorialized in a letter faxed to and received by Yarger on July 7, 2006.

{¶4} Ghany responded by terminating the employment of Modi and Raman Patel as corporate officers. He had Yarger, on behalf of ComScape, file a conspiracy action in the Cuyahoga County Court of Common Pleas against Modi, Raman Patel, and Jayanthan, although all three remained on the board of directors. Ghany also told Yarger to continue to represent ComScape as corporate counsel.

{¶5} At some time between June 27, 2006, and July 18, 2006, Byrne left the board of directors and was replaced by Subhash Kithany. As described by a federal bankruptcy judge who presided over a February 2009 bankruptcy petition filed by ComScape with Ghany's authorization, the following occurred at the July 18, 2006 meeting of the board:

> A Board of Directors meeting was held on July 18, 2006 at which Ghany, Raman [Patel], Modi, and Jayanthan were present as current directors of ComScape. Kithany resigned and during the meeting the Directors voted to fill the vacancy on the Board created by his resignation by electing Byrne

to again become a member of the Board.  See Board of Directors Meeting Minutes — July 18, 2006 at 1.

* * *

After Byrne joined the Board as a director, the directors discussed at length Ghany's misfeasance and/or malfeasance as CEO of ComScape and the related entities.  Among other things, Ghany had locked up the corporate offices and refused normal access to the offices and corporate records by any of the other shareholders or directors, and had caused ComScape to initiate litigation against Modi, Raman and Jayanthan.  Unhappy with the direction the meeting was taking, Ghany stated that the Board could continue without him and left the meeting.  With four of the five directors remaining, his departure did not break quorum.  At that point, the Board authorized retention of counsel for the company and for counsel to file suit against Ghany as a result of his actions.  The Board further authorized retention of counsel in Ohio to defend the shareholder/directors in the litigation commenced by Ghany.  After Ghany returned to the meeting, he was, among other things, directed by the Board to dismiss the lawsuit filed against Modi, Raman and Jayanthan.

*In re ComScape Telecomms. Inc.*, 423 B.R. 816, 825-826 (Bankr.S.D.Ohio 2010).

{¶6} Ghany not only refused to relinquish control of the corporation following the July 18, 2006 board of directors meeting, he rehired Yarger and his law firm as corporate counsel on August 7, 2006.  On that same day, the board of directors met.  Ghany attempted to have Yarger listen in on the proceedings by telephone, but the other board members objected and voted to have him turn off his cell phone.  Ghany refused, and the board began considering a resolution to terminate Ghany.  The minutes of the meeting show that Yarger advised Ghany to leave immediately.  Ghany fled to his office, locked the door, and called the police.  When the board tried to enter the ComScape offices, they were met by the police and a building manager who refused to allow them into the building.

{¶7} The board retained new legal counsel and filed suit in Palm Beach County, Florida (where ComScape was located), seeking to remove Ghany and prevent him from exercising control of ComScape. The board took this action because Ghany "held the checkbook" for ComScape, allowing him to remain in day-to-day control of the company. As the court noted in its findings of fact, "there were, in effect, two governing factions of ComScape, each claiming legitimacy, each with its own independent attorneys." Finding of Fact No. 13. The Palm Beach County litigation continued without resolution. Ghany remained in control of the corporate offices until February 19, 2010, at which time the federal judge hearing the ComScape bankruptcy petition entered an order finding that Ghany had been properly terminated by the board of directors. Yarger relinquished control over the ComScape legal file on February 19, 2010.

II

{¶8} The action underlying this appeal commenced in February 2011, when Yarger and his law firm filed a complaint on account and under a theory of quantum meruit for payment of legal services rendered to ComScape. Anticipating a legal malpractice counterclaim and a potential defense to those counterclaims under the statute of limitations, they also sought a declaratory judgment that they last rendered legal services for ComScape more than 12 months prior to the date on which it had commenced this action.

{¶9} ComScape filed counterclaims in which it alleged that Yarger and his law firm violated their fiduciary duties to ComScape, committed legal malpractice by

representing Ghany in a manner that furthered his personal interests over those of the corporation, committed conversion by invoicing and receiving fees for work after they had been discharged as corporate counsel, and engaged in a civil conspiracy with Ghany to usurp the corporate power of ComScape and its entities.

{¶10} In addition to its counterclaim, ComScape asserted third-party indemnity claims against Ghany alleging he violated his fiduciary duty to ComScape and that, in the event ComScape was held liable to Yarger and his law firm, Ghany be responsible to indemnify ComScape for that judgment.

{¶11} The court conducted a trial "on the discrete issue of whether the Counterclaim in this action was filed within the applicable statute of limitations period and whether the Counterclaim is barred by the doctrine of laches." It found as a matter of fact that on July 18, 2006, "the Board voted to take legal action against Yarger for posing as the corporate attorney after being notified in writing that the Board passed a resolution terminating his services and the services of his law firm and terminating his position as assistant secretary." The court found that despite authorizing legal action against Yarger, ComScape took no legal action until February 2011. It found that from July 2006 (when the board voted to terminate Yarger and his firm) through 2008 (just prior to when Ghany authorized ComScape to file for bankruptcy protection), ComScape did not pursue legal remedies against Yarger because "[Ghany] Patel was [ComScape's] focus." The court found that the board wished to pursue legal remedies against Yarger, but delayed pending the outcome of the bankruptcy action because Ghany controlled the

company finances and the board did not have the financial resources to fund a legal action on its own. In addition, the board held the opinion that Ghany had to be the primary focus of the board's litigation because, as Byrne testified, "Patel goes away. Yarger goes away. Yarger goes away. Patel is still there. Patel was the focus." Finally, the court found that "[a]s of July 5, 2009, [ComScape] had all the information it believed was necessary to assert a claim of malpractice" against Yarger and his firm.

{¶12} Based on its factual findings, the court held that ComScape failed to file its complaint within the one-year statute of limitations for legal malpractice actions as set forth in R.C. 2305.11(A). In doing so, it rejected ComScape's attempt to avoid the one-year statute of limitations for legal malpractice actions by "recasting them as something else." It held that the breach of fiduciary duty claims in actuality raised issues regarding Yarger's legal advice during the board of directors meeting and were truly legal malpractice claims. The court also rejected ComScape's argument that Yarger's appointment by the bankruptcy court to represent ComScape in an arbitration case constituted a renewal of the attorney-client relationship for purposes of the statute of limitations. Finally, the court rejected ComScape's argument that the "continuous violation" doctrine applied to claims of legal malpractice. The court found that application of the continuous violation doctrine in legal malpractice claims would undermine Ohio Supreme Court holdings that modified the discovery rule for legal malpractice actions and supplemented that rule with the "termination" rule. With the

complaint being filed outside the one-year statute of limitations, the court dismissed the counterclaims.

{¶13} In a supplemental order, the court granted in part a motion by Yarger and his firm to tax as costs the deposition transcripts of Modi, Jayanthan, and James Burnham; the cost of recording on videotape Modi's deposition; and witness fees in a total amount of $4,382.86.

III

{¶14} Of the five counterclaims filed by ComScape, only Count 3 sounded in legal malpractice; the other claims were for breach of fiduciary duty, conversion, and civil conspiracy. The court disregarded the "label attached" to the nonmalpractice claims on grounds that each of those counterclaims arose from Yarger's continued service as corporate counsel. ComScape argues that the court erred in this respect, but only makes a detailed argument regarding the breach of fiduciary duty claim in Count 2. That claim alleged that Yarger, acting as ComScape's inspector of elections for the special shareholders' meeting commenced on June 27, 2008, breached his fiduciary duty by declaring that a quorum for the meeting had been broken when Jayanthan, who held proxies for more than 60 percent of the shareholders, objected to the manner in which Ghany called the meeting. ComScape maintains that Yarger was not acting as a lawyer at the time he decided that Jayanthan's objections broke quorum, so the court erred by applying the one-year statute of limitations for legal malpractice.

A

**{¶15}** R.C. 2305.11(A) sets forth a one-year statute of limitations for legal malpractice claims. R.C. 2305.09(D) sets forth a four-year statute of limitations for a breach of fiduciary duty claim that does not involve malpractice. *Lenard v. Miller*, 8th Dist. Cuyahoga No. 99460, 2013-Ohio-4703, ¶ 37.

**{¶16}** When considering whether a legal malpractice claim has been brought within the applicable statute of limitations, "the crucial consideration is the actual nature or subject matter of the cause, rather than the form in which the complaint is styled or pleaded." *Hunter v. Shenango Furnace Co.*, 38 Ohio St.3d 235, 237, 527 N.E.2d 871 (1988), *superceded by statute on other grounds*, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984); *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St.3d 79, 81, 437 N.E.2d 1194 (1982). We have held that "[c]laims arising out of an attorney's representation, regardless of the label attached, constitute legal malpractice claims * * *." *Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, 8th Dist. Cuyahoga No. 94973, 2011-Ohio-1237, ¶ 24, citing *Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 10th Dist. Franklin No. 10AP-290, 2010-Ohio-5872, ¶ 15.

B

**{¶17}** Even though the board voted in July 2006 to remove Ghany as chief executive officer of ComScape, he continued to perform in that capacity into June 2008. The bankruptcy judge made the following findings of fact:

> On May 16, 2008, a meeting described both as the 2008 Annual Meeting of Shareholders and a Special Meeting of Shareholders was held. Ghany did

not personally attend but sent an attorney on his behalf. A Certificate of the Inspector of Elections confirmed that quorum was present and that Beer, Manoranjan, Suguness, Byrne and Ghany were again elected directors. The Certificate was approved by the shareholders. Additionally, the shareholders ratified (1) the commencement of a lawsuit by [ComScape] Holding against Ghany pending in the Palm Beach County, Florida Circuit Court, (2) the dismissal of a lawsuit against Ghany pending in the Richland County, Ohio Court of Common Pleas, (3) termination of the Employment Agreement between Ghany and Holding as of August 7, 2006, and (4) removal of Ghany as President of [ComScape] Holding.

On May 12, 2008, Ghany sent a letter to shareholders notifying them of a shareholders' meeting to be held on June 27, 2008 and enclosing a notice issued by his acting corporate secretary, Lisa Kuhn. Present at the meeting were Ghany, attorney Jonathan [sic] Yarger, the purported acting secretary Lisa Kuhn, Jayanthan, Modi, attorney David Kovach and one Mr. Cuculis and his son. After calling the meeting to order, Yarger noted that quorum was present. At the commencement of the meeting, Jayanthan and Modi objected to the meeting on the basis that the meeting had not been noticed properly, was scheduled for a date outside the time frame dictated by the Regulations, was duplicative of the shareholders' meeting held on May 16, 2008, and because Ghany was not authorized to call, schedule or notice any meeting of shareholders. Notwithstanding their objections, Jayanthan (who controlled 60% of the A class shares and 68% of the C class shares) and Modi intended to participate in the meeting, which they envisioned would include a change in the slate of directors, election of the same directors as had been elected at the May meeting, and approval of the payment of attorney fees in connection with the litigation in which the parties were embroiled. They also intended to vote on other matters which had been set forth as agenda items in Ghany's letter. However, without discussion or determining the intentions of the objecting parties, Yarger then stated that quorum had been broken because of the protests. At that point, without motion or vote, Ghany adjourned the meeting until July 11, 2008.

*In re ComScape Telecomms.*, 423 B.R. at 828-829.

{¶18} The bankruptcy judge further found that Jayanthan and Modi merely protested the shareholder meeting, but did not withdraw or indicate that they would not participate in the meeting. *Id.* at 829. The bankruptcy judge went on to find:

On July 11, 2008, Ghany called another shareholders' meeting:

> Present at this attempt were Ghany, Yarger, Kuhn, Jayanthan, Modi, Kovach and two of Ghany's sons. Again, Yarger noted that quorum was present until the meeting was protested by Jayanthan and Modi on the same basis as the previous meeting in June. Again, Yarger stated that because of the protest, quorum was broken, although the protesting parties had not left the meeting or otherwise indicate that they did not intend to participate. Again, without vote of the shareholders as required by the Regulations, Ghany adjourned the meeting. The meeting was never reconvened.

*Id*.

C

**{¶19}** Count 2 of ComScape's counterclaim alleged that "Yarger was not engaged in the practice of law" at the meetings conducted on June 27, 2008 and July 11, 2008. It alleged that as inspector of elections for ComScape, Yarger had a fiduciary duty to the corporation and its shareholders, but violated that duty by "declaring, without sufficient or even colorable basis, that objections voiced by Jayanthan on behalf of shareholder holding more than 60% of the outstanding shares negated a clear quorum of shareholders[.]" ComScape alleged that Yarger's alleged breach of fiduciary duty allowed Ghany to continue day-to-day control of the corporation despite shareholder intent to the contrary and forced the corporation to engage in unnecessary litigation and attorney fees to force his removal.

**{¶20}** The court held that "[i]n this instance, Yarger was only in a position to give legal advice regarding the quorum or to provide unspecified, ongoing 'support' for Patel by virtue of his and CWY's relationship as counsel for ComScape." Conclusion of Law

38. It therefore ruled that the civil conspiracy claim was in reality a claim for legal malpractice. This conclusion was erroneous.

{¶21} Regardless of whether Yarger was still acting as corporate counsel for ComScape during the shareholder meetings conducted on June 27, 2008, and July 11, 2008, there is no question that he had also been named the inspector of elections for the shareholder meetings. Under R.C. 1701.50(C), an inspector of elections:

> [S]hall determine the number of shares outstanding, the voting rights with respect to each, the shares represented at the meeting, the existence of a quorum, and the authenticity, validity, and effect of proxies; receive votes, ballots, consents, waivers, or releases; hear and determine all challenges and questions arising in connection with the vote; count and tabulate all votes, consents, waivers, and releases; determine and announce the result; and do such acts as are proper to conduct the election or vote with fairness to all shareholders.

{¶22} Suppose under the same facts that ComScape appointed a nonlawyer as inspector of elections. The parties agree that R.C. 1701.50(C) does not require an inspector of elections to be a lawyer, so there can be no doubt that a nonlawyer appointed as inspector of elections could determine whether a quorum existed for a shareholder meeting. There is also no doubt that if a nonlawyer determined, consistent with the statutory duties set forth in R.C. 1701.50(C) that a quorum did or did not exist, the nonlawyer inspector of elections would not be giving "legal advice." The question of whether a quorum exists is, at bottom, no more complicated than counting the number of shareholders present and deciding whether that number constitutes a majority of the directors in office. *See* Section 5.06 of the ComScape Code of Regulations ("[a]

majority of the number of Directors in office constitutes a quorum of the Board for the transaction of business").

{¶23} In this case, the court concluded that Yarger's determination was "legal advice." It did so for no other reason than that Yarger happened to be a lawyer charged with the duties of inspector of elections. With the role of inspector of elections being the same regardless of whether the person appointed to the position is a lawyer, it simply does not follow under similar circumstances that the nonlawyer does not give legal advice in determining whether a quorum is present whereas a lawyer making the same determination is somehow giving legal advice.

{¶24} The court's conclusion that Yarger was giving "legal advice" is suspect given its inability to articulate what advice Yarger was supposedly rendering. Although an inspector of elections' determination that a quorum exists for a shareholder meeting might be based on the law, it does not mean that it is "legal advice," at least not in the sense that the inspector of elections would be practicing law in the context of an attorney-client relationship. A person can have an opinion on a legal issue without being said to be practicing law. This left the court with its conclusion that Yarger was providing "unspecified, ongoing 'support'" to Ghany. This conclusion is vague and it is difficult to ascertain what is meant by it. Vagueness aside, "unspecified, ongoing 'support'" is not legal advice, at least not given the evidence in the record.

{¶25} The court made no specific findings of fact on the quorum issues raised in the June 27, 2008 and July 11, 2008 shareholder meetings, so its conclusion of law that

Yarger was giving legal advice is without foundation.  Findings of fact quoted earlier from the bankruptcy case concerning the June 27, 2008 shareholder meeting showed that Yarger first determined that a quorum was present.  It was only after Jayanthan, who disclosed that he held proxies for more than 60 percent of the outstanding shareholders, questioned the manner in which the meeting had been called did Yarger find that quorum had been broken.  At that point, Ghany, acting as chairman of the board, adjourned the meeting.  The bankruptcy court specifically found that Yarger determined that Jayanthan broke quorum "without discussion or determining the intentions of the objecting parties[.]" *In re ComScape*, 423 B.R. at 829.  The lack of "discussion" suggests that Yarger was not rendering legal advice to ComScape (or Ghany), and that he made the decision solely in his capacity as inspector of elections, not as a lawyer to the corporation.

D

{¶26} The same analysis applies with respect to the allegations of civil conspiracy contained in Count 5 of the counterclaim that relate to Yarger's execution of duties as inspector of elections.

{¶27} Count 5 made general allegations that Yarger conspired with Ghany to usurp corporate power, deprive the shareholders of their rights, and otherwise hinder and impede the directors from discovering the extent and damage of Ghany's usurpation of power.

{¶28} In *Cully v. St. Augustine Manor*, 8th Dist. Cuyahoga No. 67601, 1995 Ohio App. LEXIS 1643 (Apr. 20, 1995), we stated:   "the applicable statute of limitations for

the underlying cause of action applies to the civil conspiracy charge." Thus, to the extent Count 5 of the counterclaim alleged that Yarger engaged in a conspiracy with Ghany to use his appointment as inspector of elections to suppress or interfere with the rights of the shareholders, those allegations were not subject to the one-year statute of limitations for legal malpractice.

{¶29} It follows that the court erred by concluding that the fiduciary duty count set forth in Count 2 of the counterclaim was in actuality a claim for legal malpractice and thus barred by the one-year statute of limitations.

IV

{¶30} ComScape appears to concede that the remaining counts of the counterclaim make allegations relating to legal malpractice. It argues, however, that the court erred by determining that July 31, 2009, constituted the date on which the statute of limitations for legal malpractice began to run. It argues that its legal malpractice claims are not premised on Yarger continuing to act as its attorney despite being discharged, but that Yarger consciously disregarded his duty to step aside after being terminated by the board and "engaged in the unauthorized use of the identity of ComScape corporate counsel — or, as the [ComScape] Directors described it on July 18, 2006, Yarger 'posed' as the corporate counsel." Given that theory of its legal malpractice claims, ComScape argues that there was no cognizable event from which the statute began to run; rather, Yarger engaged in a continuing course of action, the last occurrence of which constituted the date on which the statute of limitations began to run.

A

**{¶31}** Statutes of limitation are typically governed by the "discovery" rule; that is, the time in which to bring an action accrues when the injured party discovers or should have discovered the extent and seriousness of the condition giving rise to a legal claim for relief. *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983), syllabus.

**{¶32}** The discovery rule has been applied to legal malpractice actions. In *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), the syllabus states:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. (*Omni-Food & Fashion, Inc. v. Smith* [1988], 38 Ohio St.3d 385, 528 N.E. 2d 941, applied.)

**{¶33}** The court ruled that the primary cognizable event for purposes of the legal malpractice claims was the board's July 18, 2006 resolution that authorized legal action against Yarger for posing as the corporate attorney after being notified in writing that his services had been terminated. The court found that date to be the occasion on which the board believed it could institute legal action against Yarger.

**{¶34}** It is difficult to take issue with the court's conclusion. If, as ComScape alleged in its counterclaim, Yarger committed legal malpractice by engaging in the unauthorized use of the identity of ComScape corporate counsel, then surely ComScape

knew about this claim once Yarger claimed that the board had no authority to discharge him.  Yarger made that point abundantly clear in a July 2006 letter to counsel retained by the board: "until I am instructed otherwise, * * * I remain general counsel to the company, serving at the request and pleasure of the company's Chief Executive Officer[.]" And all doubt was removed on August 7, 2006, when Ghany countermanded the board by again hiring Yarger as corporate counsel.  If ComScape believed that Ghany had no authority to appoint Yarger as corporate counsel, it would have known no later than August 7, 2006 that Yarger was representing himself as corporate counsel based on an appointment by Ghany.  To deny that point would undermine the substance of the legal malpractice claim because it would imply that Ghany had apparent authority to retain Yarger — something that ComScape vigorously denies.  ComScape cannot have it both ways.

{¶35} ComScape maintains that Yarger and his firm did not raise any argument regarding August 7, 2006, as the accrual date for the legal malpractice action, so they are estopped from doing so on appeal.  That point is debatable, but not conclusive because ComScape knew all along that it had a cause of action against Yarger.

{¶36} Byrne testified that ComScape had opportunities to challenge Yarger's continued performance as corporate counsel, but chose not to raise them.  For example, during the bankruptcy proceedings in federal court, Yarger asked the bankruptcy court to appoint him and his law firm as special counsel to ComScape.  ComScape opposed the motion, asserting essentially the same arguments that it raised in this case.  With the

exception of an appointment to represent ComScape on a pending arbitration case, the bankruptcy judge denied Yarger's motion on July 5, 2009. That order effectively terminated Yarger's work as ComScape's corporate counsel. At trial, the attorney who replaced Yarger was asked whether ComScape could have filed a legal malpractice action against Yarger by July 5, 2009. The attorney testified that "I could have filed a malpractice case against [Yarger] at any time, up to and including the time that I filed, sir."

{¶37} The reason why ComScape delayed in bringing a legal malpractice action against Yarger was made clear by Byrne. He conceded that the board focused on removing Ghany Patel, and that if "Patel goes away[;] Yarger goes away." The focus on removing Ghany reinforces the conclusion that Yarger had apparent authorization from Ghany to continue as ComScape corporate counsel. But at the very least, the focus on Ghany does not excuse inaction in seeking legal redress against Yarger.

B

{¶38} ComScape maintains that regardless of the bankruptcy court's order, Yarger's legal malpractice continued until he agreed to return the ComScape file in his possession.

{¶39} We find no legal authority for ComScape's proposition that Yarger's allegedly wrongful acts continued until such time as he surrendered the ComScape legal file. The basis of the legal malpractice claim was that Yarger and his firm "publically represented that he and his law firm continued to serve as legal counsel to and for the

ComScape entities" until February 19, 2010. Counterclaim at ¶ 82. There was no allegation that Yarger did so by virtue of being in possession of the ComScape legal file, at least not without publically claiming that his possession of the legal file meant that he was still ComScape's counsel. The legal file itself was thus symbolic — the attorney who took over as ComScape corporate counsel testified that he did not ask Yarger to surrender the file nor did he need it in order to represent ComScape. ComScape's insistence that Yarger did not cease being its corporate counsel until he agreed to surrender a meaningless legal file has no basis in law or fact.

C

{¶40} With the facts belying any reasoned explanation for failing to file the legal malpractice claims at an earlier date, ComScape argues that those claims were part of a continuing tort, the last occurrence of which (when Yarger surrendered the ComScape legal file) was the date on which the statute of limitations started to run.

{¶41} Although the limitations period for bringing an action starts to run when the plaintiff knows or has reason to know of the injury that is the basis of his action, that rule gives way in certain cases where there is a continuing violation that inflicts continuing and accumulating harm. *Painesville Mini Storage, Inc. v. Painesville*, 11th Dist. Lake No. 2008-L-092, 2009-Ohio-3656, ¶ 19, citing *McNamara v. Rittman*, 473 F.3d 633, 639 (6th Cir.2007). In Ohio, the continuing tort doctrine is usually employed in cases involving injury caused by a trespass to real property, and then only for a continuing trespass, not to a permanent trespass in which the allegedly tortious act has been fully

accomplished. *See Sexton v. Mason*, 117 Ohio St.3d 275, 282, 2008-Ohio-858, 883 N.E.2d 1013, ¶ 55.

**{¶42}** There are no Ohio cases applying the continuing tort doctrine to cases of legal malpractice, and ComScape offers no compelling reason why we should be the first to apply it in this case. As we have noted, the claimed basis for the continuing violation is that Yarger remained in possession of the ComScape legal file until February 19, 2010. But by that time, he had ceased to perform any legal work for the corporation; the sole exception being the arbitration case assigned to him by the bankruptcy judge. The ComScape legal file was, as we have said, symbolic, and Yarger's continued possession of it did not impede subsequent lawyers from representing ComScape.

**{¶43}** Allowing ComScape to delay seeking legal redress of Yarger's alleged malpractice would serve no important policy. The alleged harm had been completed for so long by the time ComScape filed its counterclaim that its failure to take prompt action undermined its core complaint — how could it reasonably accuse Yarger of wrongfully representing himself to the public as ComScape's corporate counsel when it knew about it but did nothing to stop it? Even if we assume the truth of its allegations, ComScape's inaction served only to reinforce the idea that Yarger was acting under ComScape's direction and control.

**{¶44}** We think it important under these circumstances to underscore the fact that ComScape's counterclaim was not filed to stop an ongoing harm. In any case of continuous tort, the justification for expanding the limitations period is significant when

the plaintiff is seeking to enjoin ongoing tortious conduct. But when, as here, ComScape seeks only damages for past conduct, its failure to advance an adequate reason for delaying an action that it knew it could bring years earlier suggests it did not consider its rights important enough to enforce during the period in which it claimed that Yarger committed malpractice. For these reasons, the court did not err by refusing to apply the continuing tort doctrine to toll the statute of limitations.

V

{¶45} Finally, ComScape argues that the court erred by awarding costs. Having reversed part of the court's judgment relating to the statute of limitations for the claim that Yarger breached his fiduciary duty to ComScape as the inspector of elections, the outcome of further proceedings may well affect the manner in which costs may be awarded going forward. We summarily vacate the award of costs.

{¶46} This cause is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR